CALIF-ASIA CO., LTD. *v.* UNITED STATES

No. 6582.—Invoice dated Shanghai, China, April 19, 1941.
Certified April 19, 1941.
Entered at Los Angeles, Calif., May 17, 1941.
Entry No. 5732.

(Decided on rehearing [Reap. Dec. 6063] December 6, 1946)

*Harper & Harper* (*Lawrence A. Harper* and *George R. Tuttle* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*Arthur R. Martoccia, Harold L. Grossman,* and *Daniel I. Auster,* special attorneys), for the defendant.

EKWALL, Judge: This case is before me on rehearing, the original decision having been rendered by Judge Cole and reported in Reap. Dec. 6063. It involves the dutiable value of certain grass rugs purchased in Shanghai, China, and exported to this country on or about April 20, 1941. They were invoiced at two unit prices, viz, Shanghai $0.59¼ and $0.70¼ per square foot, plus packing and non-dutiable charges. The difference in the invoice prices is due, apparently, to the difference in dates on which, according to statements on the invoices, the orders were accepted, to wit, January 24 and March 13, 1941. They were entered at Shanghai $.70¼ per square foot, plus packing, and were appraised at Shanghai $.71½ per square foot, plus packing, plus 3.17 per centum.

At the first hearing the United States examiner of this merchandise at the port of entry testified in effect that the rugs were advisorily appraised at the values above set forth on the basis of export value; that the merchandise was purchased at a fixed rate of exchange and that the 3.17 per centum represented the difference between the rate of exchange used on entry and the fixed rate of exchange set forth on the invoice and on the basis of which the rugs were purchased. Judge Cole held upon the record before him that the advance in value resulted from the appraiser's conversion of currency and that by such conversion the appraiser had exceeded his statutory authority in finding value. He, therefore, found the proper dutiable value to be Shanghai $.71½ per square foot, plus packing, without the addition of the 3.17 per centum.

In the order granting the motion for rehearing (Reap. Dec. 6078), Judge Cole stated that in view of the vagueness of the record and in order that the facts in regard to the appraiser's action might be more fully presented, additional testimony was necessary.

Upon the rehearing before me the United States appraiser of the merchandise appeared as a witness on behalf of the importer, the plaintiff herein, and testified that while he appraised the merchandise

at Shanghai $.71½ plus 3.17 per centum, he considered the transactions to be in United States currency. This was because of the fact that the transaction had been consummated at a fixed rate of exchange. However, under the provisions of article 776 (*i*) of the Customs Regulations of 1937, as amended by T. D. 50251, in effect at the time of appraisement, he was obliged to express his appraisement in the currency of the country of exportation. He arrived at his figure of Shanghai $.71½ plus 3.17 per centum by multiplying the $.71½ by the fixed rate of exchange and dividing that result by the current rate of exchange which he stated to be $.052093, thereby arriving at a figure in Shanghai currency of $.7377. Instead of expressing his appraisal at that figure, he expressed it as Shanghai $.71½ plus 3.17 per centum, which he considered to equal the freely offered price to all purchasers in Shanghai on the date of exportation. My understanding of the reason underlying the appraiser's action is that he considered the amended value of Shanghai $.71½ to be based upon the rate of exchange noted on the invoice, which he deemed to be an arbitrary rate; therefore, in order to arrive at the proper statutory value he added to that value an amount equal to the difference between a unit value arrived at by use of the so-called arbitrary rate of exchange and a unit value computed upon the basis of the current rate of exchange (T. D. 50374). However, instead of expressing such value as Shanghai $.7377, he expressed his finding of value as Shanghai $.71½ plus 3.17 per centum.

In view of this additional testimony, and further in view of the fact that such testimony was produced by the appraiser, whereas the evidence on the first hearing was given by the examiner, whose finding of value is merely advisory, I find that the action of the appraiser in computing the amount in Shanghai dollars was within his power under section 500 (a) of the Tariff Act of 1930, and was necessary in order that he might arrive at what he considered the export value of this merchandise. It might have been better had he expressed his finding as Shanghai $.7377 but I find nothing in his method of arriving at the unit of value which contravenes the statute.

In the case of *Klingerit, Inc.* v. *United States*, Reap. Dec. 6159, decided subsequent to the promulgation of the order for rehearing herein, the court distinguished between conversion of currency by the collector for the purpose of assessment of duties under section 522, Tariff Act of 1930, and conversion of currency by the appraiser for the purpose of comparison in ascertaining the value of merchandise. There the contention was raised that "the appraiser having found the value in Austrian schillings, it was beyond his power and duty to convert such values into another currency." In overruling this contention, the court used the following language:

While it is frequently stated that the conversion of currency is peculiarly the function of the collector of customs, nevertheless, it is not strictly accurate to confine the function solely to that officer. Obviously, article 776 of the Customs Regulations of 1937 contemplates that the conversion of currency "for the purpose of comparison," as indicated in subparagraph (e) thereof, is to be performed by the appraiser.

It will be observed that section 500 of the Tariff Act of 1930, defining the duties of appraising officers, declares in subparagraph (a) thereof, that the appraiser shall perform his duties—

\* \* \* under such rules and regulations as the Secretary of the Treasury may prescribe—

Subparagraph (e) of article 776, *supra*, is preceded by the general admonition that the appraiser, among other things, "will observe the following rules in making returns on invoices." Said subparagraph (e) reads:

(e) When merchandise identical with or similar to that under appraisement is sold for domestic consumption and for exportation *in different currencies in the country of exportation, the currencies involved should, for the purpose of comparison to determine whether the foreign or export value is the higher, be converted into United States currency at the rate certified by the Federal reserve bank for the date of exportation of the merchandise involved;* but the currency expressed in the appraiser's return should be the currency in which identical or similar merchandise is usually bought and sold in the ordinary course of trade for domestic consumption in the country of exportation or for exportation to the United States, depending upon whether the foreign or export value is adopted as the basis of appraisement. [Italics supplied.]

The italicized language in the above quotation clearly discloses that under certain conditions it is incumbent upon the appraiser to convert different currencies "for the purpose of comparison" as above indicated, and his action in ascertaining, estimating, and appraising merchandise, to the extent that his processes involve the conversion of currency, is legal. This conclusion is confirmed by the language of subparagraph (f) of said article 776 which reads:

(f) The conversion of currency, being *a* function of the collector, *is not related to the determination of the unit values of merchandise or of the costs, charges, etc., entering into the determination of dutiable values,* and it is not the duty of appraising officers to find or state the value of currency. [Italics supplied.]

The apparent purpose of subparagraph (f), *supra*, was to make it clear that the conversion of currency, being a function of the collector "For the purpose of the assessment and collection of duties" pursuant to section 522 of the Tariff Act of 1930, has no relation to the action of the appraiser in converting currency "for the purpose of comparison" in ascertaining "the unit values of merchandise or of the costs, charges, etc., entering into the determination of dutiable values" of the merchandise, which latter action, pursuant to subparagraph (e), *supra*, is the function of the appraiser.

See also the case of *United States* v. *Sontag's Shoe Stores*, Reap. Dec. 6091.

Applying the reasoning of the cases cited to the facts of record herein, it is apparent that under the conditions as they existed here it was incumbent upon the appraiser to convert the currency of the invoice in order to arrive at an amount in Shanghai dollars which he considered represented the freely offered price of this merchandise under the statute.

The presumption of correctness attaching to the appraiser's finding of value has not been overcome by the plaintiff herein.

For the foregoing reasons, I find the value of the grass rugs in suit to be Shanghai $.7377 per square foot, plus packing, which represents the export value as defined in section 402 (d) of the Tariff Act of 1930.

Judgment will be rendered accordingly.